## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| CHARLETTA THOMAS, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:23-cv-02595-SHL-tmp |
| BAPTIST HEALTH SCIENCES UNIVERSITY, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE, AND DENYING AS MOOT THE JOINT MOTION TO CONTINUE TRIAL SETTING

Defendant Baptist Health Sciences University ("BHSU") seeks summary judgment on Plaintiff Charletta Thomas's claims under the Age Discrimination in Employment Act and the Tennessee Human Rights Act. (ECF No. 21 at PageID 65–66.) Thomas responded in opposition[1] (ECF No. 23), and BHSU replied (ECF No. 27). Even if Thomas could assert a prima facie case of discrimination under the ADEA and retaliation under the THRA, she has no evidence that BHSU's decisions not to hire her were pretextual. Thus, BHSU's motion for summary judgment is **GRANTED**.

## BACKGROUND[2]

Baptist Memorial Health Care Corporation ("Baptist") is the functional parent

---

[1] Although Thomas timely filed her substantive response to the motion, she filed her response to BHSU's statement of material facts a day late. (ECF No. 26 at PageID 430.) BHSU attempted to consult with Thomas's counsel about the delay, but counsel neglected to timely respond and BHSU filed a motion to strike the filing. (ECF No. 29 at PageID 502–03.) After BHSU filed its motion, Thomas's counsel explained that he encountered technical difficulties when trying to file the document. (Id. at PageID 503.) Given that explanation, BHSU withdrew its motion to strike. (Id. at PageID 502–03.) Thus, that motion is **DENIED AS MOOT**.

[2] Unless otherwise noted, neither party disputed these facts in their statements of material facts.

corporation in a family of related organizations.[3]  (ECF No. 24 at PageID 392.)  The Baptist

family includes subsidiaries that operate hospital facilities and other business entities.  (Id.)  One

such subsidiary is BSHU (id.), a health sciences college (id. at PageID 393).  BHSU educates

health care professionals across sixteen different specialties and regularly confers associates,

bachelor's, and doctoral degrees to students.  (Id.)  It is comprised of three divisions: general

education and health studies, allied health, and nursing.  (Id.)  It also has a College of

Osteopathic Medicine.  (Id.)

For the most part, Baptist and BHSU operate independently at separate locations.  (Id. at

PageID 392.)  BHSU makes its own hiring, firing, and disciplinary decisions through its own

employees and local, on-site Human Resources professionals.  (Id.)  But Baptist does provide

BHSU with support services to assist with human resources, recruiting, and application

technology.  (Id.)  And prospective employees view open jobs across the entire family of Baptist

organizations.  (Id.)

Individuals who wish to apply for a Baptist job must create an online account that houses

their open applications and communications with talent acquisition professionals.  (Id. at PageID

392, 394.[4])  Recruiting professionals conduct a preliminary review of completed applications to

ensure that each applicant has the requisite education or licensure.  (Id. at PageID 394.)  Then,

the hiring manager determines who to interview based on the total pool of qualified applicants.

(Id.)  To maintain a neutral hiring process, hiring managers never receive or view an applicant's

---

[3] Because Thomas references her applications for separate Baptist positions outside of BHSU in
support of her claims against BHSU, it is necessary to explain how Baptist is involved.

[4] The pages of Thomas's response to BHSU's statement of material facts do not appear in order.
The first page of the filing is the tail end of a blank page without any text; the page numbered as
"2" appears before the page numbered as "1"; the page numbered "6" appears after the page
numbered "4"; and so on.  (See generally ECF No. 24.)  The Court will do its best to extrapolate
the order in which the pages are intended to appear.

personally identifiable information.  (Id.)  And they do not further investigate each candidate

beyond the initial qualification check.  (Id.)  According to Baptist, typically, it is not until after a

candidate is selected for hire that a background check and prior internal employment records are

ordered and reviewed to verify that a candidate is eligible for rehire.[5]  (Id.)  The decision as to

whether to process records checks before or after hiring decisions are made depends on

recruitment caseload and recruiter preferences.  (Id. at PageID 394–95.)  But checks are always

done before the start of employment.  (Id.)

In the fall of 2021, BHSU opened applications for an Academic Success Coach position

in the Blue Healer Student Success Center.  (Id. at PageID 395.)  BHSU created the Success

Center after receiving a significant grant from the Department of Education under its

Predominantly Black Institutions Competitive Grant Program.  (Id.)  The Success Center

provides students with access to resources like tutoring, mentoring, and academic success

planning to help them achieve their academic and career goals.  (Id.)

Thomas applied for the ASC position in November 2021.  (Id.)  She was forty-nine years

old when she submitted her application.  (Id.)  The ASC Supervisor, Mary Margaret Freeman,

was the designated hiring manager for the ASC role.  (Id. at PageID 395, 397.)  Freeman selected

---

[5] Thomas disputes this fact because she applied for positions at Baptist but was only informed that she was ineligible for rehire after she filed a charge of discrimination with the EEOC.  (ECF No. 24 at PageID 394.)  However, Thomas's support for her dispute only confirms BHSU's position—Baptist typically does not check to see if a candidate is eligible for rehire until after a candidate is selected for hire.  Thus, Baptist would not have informed Thomas that she was ineligible for rehire during the initial stage of reviewing applications.  Thomas also does not cite to any fact in the record that disputes BHSU's description of the process.  She only cites to her own allegations in the complaint and BHSU's answer, which do not contradict the fact in question.  She admitted in her deposition that she does not "know anything about the process for determining whether somebody's eligible for rehire."  (ECF No. 21-5 at PageID 225.)  And she did not dispute that "[n]o further investigation is done" beyond an initial check to ensure each applicant has the requisite education and licensure.  (ECF No. 24 at PageID 394.)

Thomas for an interview, and both she and the Dean of Student Success, Dr. Kim Cunningham, conducted the first interview. (Id.) Afterwards, Freeman invited Thomas and five other applicants back for a second interview. (Id. at PageID 397.)

The second-round applicants interviewed with a panel of BHSU employees including Freeman, Dr. Cunningham, Mellody Selph, Molly Antoine, and Lynn Anderson. (Id.) Freeman required the applicants to prepare a presentation about one of the following topics: goal setting and motivation, study skill strategies, time management, note taking skills, test-taking strategies, and reading comprehension skills. (Id.) After the presentation, the panel asked questions about the topic as well as the applicant's resume and background information. (Id.) Each member of the panel had a list of twelve suggested questions, but anyone could ask additional clarifying questions. (Id.)

During Thomas's second interview, Anderson expressed confusion about the timeline of her resume and asked her about her education and experience. (Id.) Thomas admits that "her resume contained errors and misleading entries." (Id. at PageID 396.) Her resume indicates that she received two separate associate degrees, but she only earned one. (Id.) It states that she was an academic advisor and managed a "team" of employees, but she was only a volunteer advisor and did not manage or supervise anyone. (Id.) It also indicates that she was an adjunct instructor for a technology program, but she only actually taught once or twice. (Id.) And Thomas admitted that her "consultant" role was an administrative role on an intermittent basis. (Id.)

Thomas felt like Anderson was "angry" at her during the second interview because Anderson thought she lied on her resume. (Id.) Thomas also felt "attacked" because Anderson questioned the accuracy of her education and experience. (Id.) During her deposition, Thomas

4

stated that she thought Anderson's attitude could have been race related.[6]  (Id.)  She also believes

Anderson's attitude could have been related to her age because Anderson asked her when she

graduated high school.  (ECF No. 28 at PageID 476.)  At the time of the second interview,

Thomas was fifty years old (id.), and Anderson was almost seventeen years older than Thomas

(ECF No. 24 at PageID 396).

    After the second round of interviews, some members of the panel submitted feedback

about each candidate.  (Id. at PageID 396, 399.)  The feedback forms allowed each member of

the panel to include written feedback and asked them to score the candidate on a scale from one

to five—with one being the lowest and five the highest—in the following categories: job

experience in a similar role, knowledge of higher education and success strategies,

communication skills, dedication to customer service, and timeliness and follow through.  (Id.)

Only Freeman, Antoine, and Selph submitted scoring sheets for the candidates because they were

the only members of the panel who participated in every interview.  (Id. at PageID 399.)  Dr.

Cunningham was called away from Thomas's interview, and Anderson only participated in the

interview of some candidates.  (Id.)

    Thomas has no knowledge of who submitted scoring sheets, what feedback the panel

gave her, or who was involved in the hiring decision.  (Id.)  However, at the end of the second

round of interviews, BHSU did not offer the position to Thomas.  (Id. at PageID 398, 399.)  She

scored the lowest of all six candidates in that round, and the panel submitted negative written

feedback about her performance.  (Id.)  They stated that Thomas paced and danced around

during her presentation and that she played music and danced at the end of her presentation.  (Id.

at PageID 398.)  They noted that Thomas's presentation lacked any actionable items for success

---

[6] Thomas does not assert a discrimination claim based on her race.

and was little more than affirmations. (Id.)  Thomas does not dispute that she paced, played

music, and danced around (id.), but she does assert that she included more than affirmations

(ECF No. 21-5 at PageID 208).

    In addition to Thomas's performance, the panel also submitted negative feedback about

her demeanor. (ECF No. 24 at PageID 398, 400.)  They noted that Thomas did not sit down for

the interview portion after her presentation and that her demeanor made them nervous and

anxious. (Id.)  The panel also indicated that Thomas could not give clear examples of her

experience helping students and found that her resume was facially contradictory. (Id.)

    Instead of hiring Thomas for the ASC position, BHSU hired DeAundre Williams, who is

under forty years old. (Id. at PageID 398, 399.)  Williams scored significantly higher than all of

the other candidates on his feedback form, and the panel was highly impressed with his

presentation and his experience teaching high school math. (Id.)  His presentation was an

encouraging take on teaching a difficult subject, and he included concrete examples of

preparation skills that students could apply. (Id.)

    Although BHSU does not dispute for purposes of summary judgment that Anderson

asked Thomas when she graduated high school, Freeman indicated that she does not recall

Anderson asking this question and she does not recall Thomas telling them her age. (Id. at

PageID 400.)  Freeman states that she did not consider Thomas's age in making her hiring

decision and that she selected Williams because he was the most qualified candidate. (Id.)

    On December 8, 2021, Freeman emailed Thomas to inform her of the decision to hire a

different candidate. (Id. at PageID 400–01.)  She did not state why she did not select Thomas for

the position. (Id. at PageID 403.)  Thomas responded to the email and informed Freeman for the

first time that she felt like Anderson had asked her inappropriate questions and that she was

seeking legal recourse.  (Id. at PageID 401.)  Thomas admits that she has no knowledge about

Williams's education or experience.  (Id.)  She also does not know anything about the hiring

process or selection criteria.  (Id.)

After complaining about feeling discriminated against, Thomas continued to apply for

other roles at Baptist.  (Id. at PageID 403.)  From March to August 2022, she applied for many

different positions at different Baptist entities.  (ECF No. 28 at PageID 477–78.)  She only

discusses four of them in her complaint (ECF No. 1 at ¶¶ 15–17, 19), but Baptist provides

evidence that she applied for at least eight positions during that timeframe (ECF No. 21-5 at

PageID 258.)  Baptist never interviewed her for any of those positions, and it never informed her

that she was ineligible for rehire.  (ECF No. 28 at PageID 477–78.)  But Baptist's internal

records indicate that it marked her as ineligible for rehire for two positions she applied for in

March and one position she applied for in May.  (ECF No. 21-5 at PageID 258.)

On August 29, 2022, eight months after she was not selected for the ASC role, Thomas

filed a charge of discrimination with the EEOC.  (ECF No. 24 at PageID 401.)  She alleged that

BHSU failed to hire her because of her age and that Anderson asked her when she graduated

from high school.  (Id.)  The EEOC held a mediation on November 8, 2022 to explore settlement

of the age discrimination claim.  (ECF No. 28 at PageID 479.)  While it was investigating the

charge, BHSU learned that Thomas was previously employed at a Baptist entity and was

ineligible for rehire.  (ECF No. 24 at PageID 401.)  Thomas did not disclose on her resume that

she had previously worked for Baptist Memorial Health Care from January 7, 2013 until October

5, 2013.  (Id. at PageID 396, 401–02.)  She voluntarily resigned from that position, and Baptist

marked her as ineligible for rehire because she did not call in or show up for her last two shifts.

(Id. at PageID 402; ECF No. 21-4 at PageID 127.)  Under Baptist's Termination Policy, an

employee who resigns and fails to work a notice period is not eligible for rehire. (ECF No. 24 at

PageID 402.)

Thomas does not dispute that the Eligibility for Re-Hire form indicates that she is

ineligible because she did not work until the end of her notice period, but she does dispute

whether that statement is true. (Id.) Thomas states in her Declaration that the eligibility form

was signed by someone who was not her supervisor, and it falsely states that she did not show up

for her last two shifts. (Id. at PageID 414.) But she does not dispute that, as of October 9, 2013,

Baptist considered her ineligible for rehire. (Id. at PageID 402.)

On December 16, 2022, nearly three months after she filed her first charge with the

EEOC, Thomas applied for another BHSU position: the Director of Admissions and Student

Affairs position in the College of Medicine. (Id. at PageID 403.) She initially received an

automated notification informing her that her application would be reviewed by BHSU's

recruiting staff and that someone would contact her if her experience and qualifications met

BHSU's needs. (Id.) Because BHSU discovered that Thomas was ineligible for rehire while

investigating her EEOC complaint, the Talent Acquisition Manager, Carol Farris, informed her

that she was ineligible for the position. (Id. at PageID 404.) Farris attached a Rehire Eligibility

Review Form for Thomas to complete if she wanted BHSU to reconsider its eligibility

determination. (Id.) That was the first time Thomas was informed that she was designated as

not eligible for rehire. (ECF No. 28 at PageID 480.) Thomas never completed the review form,

and she never responded to Farris's email to clarify her eligibility or contest the designation.

(ECF No. 24 at PageID 404.) She therefore remained ineligible for the Director role. (Id. at

PageID 405.)

The Assistant Dean of Administration for BHSU's College of Medicine Program,

Cameron Conn, was the designated hiring manager for the Director role. (Id.) Conn had no knowledge of Thomas's age or her charge with the EEOC, but he never considered Thomas for the role because she never completed the Rehire Eligibility Review Form. (Id.) Instead, Conn hired Meghan Woodham because he considered her to be the most qualified candidate. (Id.) Unlike Thomas, Woodham has a Doctorate in Education, and she was the Assistant Director of Admissions at another college of osteopathic medicine at the time she applied. (Id. at PageID 405–06.) Thomas did not have admissions or student affairs experience at a medical college, and it had been more than ten years since she had been an academic advisor. (Id.)

Thomas filed this lawsuit on September 20, 2023, alleging that BHSU's failure to hire her for the ASC role violated the ADEA and that the failure to hire her for the Director role constitutes unlawful age discrimination and retaliation in violation of the THRA. (Id.)

## APPLICABLE LAW

A court must grant summary judgment when the moving party shows that there is no "genuine dispute" of "material fact." Fed. R. Civ. P. 56(a). The moving party can satisfy its burden by showing that the nonmoving party has no evidence to support his cause. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party does so, the burden shifts to the nonmoving party to go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir. 2009) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The "mere existence of some alleged factual dispute" is not enough to defeat a properly supported motion—only disputes about facts that "might affect the outcome of the suit" are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a reasonable jury could decide for the nonmovant, then a genuine dispute of material fact exists. Blanchet v. Charter

Comms., LLC, 27 F.4th 1221, 1226 (6th Cir. 2022) (citing Anderson, 477 U.S. at 255).  The

court's role is not "to weigh the evidence and determine the truth of the matter."  Moldowan, 578

F.3d at 374 (quoting Anderson, 477 U.S. at 249).  Instead, it views the evidence and draws all

reasonable inferences in the light most favorable to the nonmoving party.  Kleiber v. Honda of

Am. Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007).

## ANALYSIS

Thomas asserts that BHSU violated (1) the ADEA by failing to hire her for the ASC role

in December 2021 because of her age and (2) the THRA[7] by retaliating[8] against her and failing

to consider her for the Director role in December 2022 because she filed a charge of

discrimination with the EEOC.  BHSU seeks summary judgment on both of these claims.  In the

alternative, it seeks summary judgment on her claims for wage-based damages as to both roles

because (1) she has no evidence to suggest that she would have been hired for the ASC role

despite being designated as ineligible for rehire, and (2) she failed to mitigate her damages as to

the Director role when she refused to complete the rehire eligibility review form.  Because there

are no disputes of material facts that would allow a reasonable jury to find in favor of Thomas on

either of her claims, the Court does not reach BHSU's alternative argument about damages.

---

[7] Thomas filed a second charge with the EEOC on October 5, 2023, two weeks after she filed
this lawsuit, alleging that Baptist refused to consider her for the Director position in retaliation
for filing the first charge in the fall of 2022.  (ECF No. 24 at PageID 406.)  But she never
amended her complaint to add a retaliation claim under the ADEA.  Thus, she only pursues this
claim under the THRA.

[8] Thomas initially alleged both retaliation and age discrimination under the THRA.  In her
response to BHSU's motion, she abandons the discrimination claim because she cannot prove a
prima facie case of age discrimination—BHSU never considered her for the Director role and did
not compare her qualifications to other applicants.  (ECF No. 23 at PageID 380.)  Thus, BHSU's
motion for summary judgment on this claim is **GRANTED**.

I.    **ADEA**

An employer who refuses to hire an individual "because of" her age may be held liable under the ADEA.  29 U.S.C. § 623(a)(1).  "Unlike a Title VII discrimination plaintiff, an ADEA plaintiff cannot prove her case by establishing that age was simply a 'motivating factor'" for the employer's decision.  Reed v. Am. Cellular, Inc., 39 F. Supp. 3d 951, 960 (M.D. Tenn. 2014) (quoting Gross v. FBL Fin. Servs., 557 U.S. 167, 177 (2009)).  Instead, the ADEA's "because of" language requires Thomas to prove that her age was the "but for" cause of BHSU's refusal to hire her.  See Miles v. S. Cent. Hum. Res. Agency, Inc., 946 F.3d 883, 887 (6th Cir. 2020) (quoting Scheick v. Tecumseh Pub. Sch., 766 F.3d 523, 529 (6th Cir. 2014)).

Thomas can prove her ADEA claim with either direct or circumstantial evidence.  See Mayhue v. Cherry Street Servs., Inc., 598 F. App'x 392, 400 (6th Cir. 2015) (citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc)).  Circumstantial evidence is proof that does not facially establish discriminatory animus but would allow a factfinder to "draw a reasonable inference that discrimination occurred."  Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009) (quoting Wexler, 317 F.3d at 570).  Here, the parties agree that Thomas relies solely on circumstantial evidence.

To prove an ADEA claim based on circumstantial evidence, Thomas must first establish a prima facie case of age discrimination.  See Viergutz v. Lucent Techs., Inc., 375 F. App'x 482, 484 (6th Cir. 2010) (quoting Allen v. Highlands Hosp. Corp., 545 F.3d 387, 394 (6th Cir. 2008)).  To do so, she must prove that (1) she is at least forty years old, (2) she applied for and was qualified for the ASC position, (3) she was considered for and denied the position, and (4) she was rejected in favor of another person with similar qualifications who was substantially younger.  See id. (citing Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998)).  For

purposes of its summary judgment motion, BHSU assumes that Thomas can establish a prima facie case of discrimination. Thus, the burden of production shifts to BHSU to "articulate a legitimate, non-discriminatory reason" for deciding not to hire Thomas. See Craig-Wood v. Time Warner N.Y. Cable LLC, 549 F. App'x 505, 508 (6th Cir. 2014) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973)).

    A.    Legitimate, Non-Discriminatory Justification

BHSU asserts that it chose not to hire Thomas because (1) she performed poorly in her second interview and (2) she was not the most qualified candidate. (ECF No. 21-1 at PageID 78.) To begin, poor performance in an interview qualifies as a legitimate, non-discriminatory reason for denying Thomas the ASC position. See Plumb v. Potter, 212 F. App'x 472, 479 (6th Cir. 2007). Thomas does not dispute that she paced and danced around during her interview, and she admits that her resume contained misleading errors. Her resume stated that she earned two different associate's degrees seven months apart, but she admits that she only earned one. She stated that she managed an entire team as an advisor, but she did not manage or supervise any employees. Even if the Court assumes that pacing and dancing around during a presentation to college students could be effective, there is no way to construe her resume in a manner that is favorable to her. And she does not dispute that she was the lowest ranked candidate.

"Selecting a more qualified candidate" also "constitutes a legitimate, non-discriminatory reason" for deciding not to hire Thomas. See Hawkins v. Memphis Light, Gas & Water Div., 520 F. App'x 316, 319 (6th Cir. 2013) (citing Provenzano, 663 F.3d at 815). BHSU asserts that it hired Williams instead of Thomas because he had experience as a high school math teacher, which gave him the requisite technical knowledge to assist students. His presentation included concrete examples of study and preparation skills that students could apply themselves. And the

12

members of the panel who submitted feedback unanimously rated his interview performance the highest of all candidates.  Thomas does not dispute any of these facts—she only argues that she was also qualified for the position.  But BHSU "largely enjoys the right to decide the qualifications it prefers" in an employee, see Flowers v. WestRock Servs., Inc., 979 F.3d 1127, 1131–32 (6th Cir. 2020) (citing Wexler, 317 F.3d at 575), and a court cannot displace management's judgment with its own, id. (quoting Hendrick v. W. Reserve Care Sys., 355 F.3d 444, 462 (6th Cir. 2004)).

Thomas argues that a jury should decide the merits of BHSU's proffered justifications. (ECF No. 23 at PageID 384.)  However, before she can reach a jury, she must produce at least some evidence from which a jury could reasonably reject BHSU's explanations of why it decided not to hire her.  See Blizzard, 698 F.3d at 285 (quoting Chen, 580 F.3d at 400).

B.    Pretext

Because BHSU has identified legitimate and non-discriminatory justifications for its decision, the burden shifts back to Thomas to point to a genuine issue of material fact as to whether these proffered justifications are a pretext for discrimination.  Id. at 508–09 (citing McDonnel Douglas, 411 U.S. at 802–03).  Thomas can do so by offering evidence that BHSU's proffered reasons (1) have no basis in fact, (2) did not actually motivate its decision, or (3) were insufficient to warrant the challenged conduct.  See Miles, 946 F.3d at 888 (quoting Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009)).  This three-part test encapsulates the most common ways of proving pretext, but the court should not apply it rigidly.  Blizzard v. Marion Tech. Coll., 698 F.3d 275, 285 (6th Cir. 2012).  Instead, the question of pretext "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?"  Miles, 946 F.3d at 888 (quoting Chen, 580 F.3d at 400 n.4).

13

Thomas does not argue that BHSU's proffered justifications have no basis in fact or that they were insufficient to warrant its decision to hire someone else.  Instead, she argues that the proffered reasons did not actually motivate BHSU's decision.  (See ECF No. 24 at PageID 398 ("Undisputed for the purpose of ruling on summary judgment that these are the reasons the Defendant states it had for selecting the younger candidate over the Plaintiff but disputes the reasons given are the true reason and alleges in her lawsuit that these claimed reasons are a mere pretext for discriminating against her because of her age . . . .").)  Thus, Thomas must rebut BHSU's proffered justifications with the "sheer weight of the circumstantial evidence of discrimination."  See Reed, 39 F. Supp. 3d. at 967 (quoting Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000)).

The only evidence that Thomas has to establish pretext is that Freeman hired someone younger, and Anderson asked her when she graduated high school.  But the fact that Freeman hired someone younger cannot be used to establish pretext by itself because Thomas is independently required to prove this fact as an element of her prima facie case—"if satisfying the prima facie case requirements alone were enough to establish pretext, then the pretext prong would be superfluous."  See Miles, 946 F.3d at 895 (quoting Alfrey v. AK Steel Corp., 211 F. App'x 393, 396 n.3 (6th Cir. 2006)).  And Anderson's question is both too isolated and too ambiguous to support an inference of age discrimination.  See Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025–26 (6th Cir. 1993) (holding that an employer's statement that the employee's fifty-fifth birthday "was a cause for concern" was "too ambiguous to establish the necessary inference of age discrimination").  Moreover, the undisputed facts demonstrate that Anderson's opinion was not considered in the decision to hire a different applicant.

Even looking at the facts in the light most favorable to Thomas, she admits that her

resume contained misleading errors, and she acknowledged that Anderson expressed confusion about the timeline of events. She testified at her deposition that Anderson characterized her resume as "very questionable." (ECF No. 21-5 at PageID 195.) Anderson went through her education "step-by-step." (Id. at PageID 196.) After going through all of her education and work experience, Anderson asked, "Now, what year did you say you graduated?" (Id.) Thomas herself stated that she believed Anderson to be angry with her because Anderson felt like she lied on her resume, not because of her age.

Even if Anderson, who is nearly seventeen years older than Thomas, harbored age-based animus against her, Thomas admits that Anderson did not participate in the hiring decision, and she did not submit any feedback for Freeman to consider. See Miles, 946 F.3d at 896 (quoting Diebel v. L & H Res. LLC, 492 F. App'x 523, 532–33 (6th Cir. 2012)) (stating that discriminatory remarks "can only serve as pretext if 'a person in a position to influence the alleged employment decision' made them"). Freeman was the ultimate decision maker, and she only considered written feedback from herself, Antoine, and Selph. Thomas has failed to put forth any evidence from which the Court could infer that Anderson influenced Freeman's decision. To the extent that Freeman considered Anderson's comments during the interview, Thomas insinuated in her deposition that Freeman disagreed with Anderson's attitude—she testified that Freeman rolled her eyes at Anderson after she asked her questions.

No reasonable juror could conclude that BHSU decided not to hire Thomas because of her age. Although it is undisputed that Anderson asked her when she graduated high school, the undisputed proof demonstrates that she was not part of the decision at issue. Left with the only evidence of pretext being that someone under the age of forty years old was hired, Thomas cannot withstand summary judgment by introducing a "mere scintilla" of evidence in her favor.

15

See Mayhue, 598 F. App'x at 400 (quoting Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir.

2006)).  Thus, BHSU's motion is **GRANTED** as to her ADEA claim.  She likewise fails to

support her claim for retaliation under the THRA.

## II.    THRA

The THRA prohibits employers from retaliating against an employee who engages in

protected conduct.  Tenn. Code Ann. § 4-21-301(a)(1).  Thomas alleges that BHSU retaliated

against her for filing a charge of discrimination when it refused to consider her for the Director

position in December 2022.  (ECF No. 23 at PageID 380.)  This claim is analyzed under the

same framework as her age discrimination claim.  See Tenn. Code Ann. § 4-21-311(e); Thornhill

v. WillScot Mobile Mini Holdings Corp., No. 3:23-cv-00673, 2025 WL 275130, at *9 (M.D.

Tenn. Jan. 23, 2025).  And it fails for the same lack of evidence.

### A.    Prima Facie Case

BHSU first argues that Thomas cannot state a prima facie case of retaliation.  To do so,

Thomas must provide evidence that (1) she engaged in a statutorily protected activity, (2) BHSU

knew about her protected conduct, (3) BHSU took an adverse employment action against her,

and (4) there is a causal connection between the protected activity and the adverse employment

action.  See Fox v. Eagle Distrib. Co., Inc., 510 F.3d 587, 591 (6th Cir. 2007) (citing Wiegel v.

Baptist Hosp. of East Tenn., 302 F.3d 367, 381 (6th Cir. 2002)).  BHSU does not argue that

Thomas cannot establish the first three elements.  Indeed, filing a charge with the EEOC is

protected conduct, BHSU knew about that protected conduct, and BHSU chose not to consider

Thomas for the Director position when she applied for it.  Instead, BHSU asserts that Thomas

cannot prove that there is a causal connection between its decision not to consider her for the

Director position in December 2022 and her filing a charge of discrimination with the EEOC in

August 2022 because BHSU marked Thomas as ineligible for rehire on October 9, 2013, which

is the real reason why it could not consider her application.  (ECF No. 21-1 at PageID 83.)

BHSU characterizes the adverse employment action as the notation in Thomas's file that

she was ineligible for rehire.  Thus, under BHSU's theory, Thomas cannot prove a prima facie

case of retaliation because the adverse employment action occurred almost ten years before the

protected activity.  See Cole v. Taber, 587 F. Supp. 2d 856, 875 (W.D. Tenn. 2008) (citing

Gentry v. Summit Behav. Healthcare, 197 F. App'x 434, 441 (6th Cir. 2006)) (stating that a

plaintiff cannot show a causal connection when "the purported adverse employment action

occurred before the exercise of protected activity").  But BHSU misconstrues the adverse

employment action at issue here, which Thomas alleges is BHSU's failure to consider her for the

position, not the notation in her file.  The notation is properly construed as BHSU's legitimate,

non-discriminatory reason for failing to consider Thomas's application—indeed, Thomas asserts

that it was a pretext for discrimination.

Thus, because the alleged adverse employment action occurred after the protected

activity, Thomas has enough evidence to establish a tenuous causal connection through temporal

proximity.  She filed her charge of discrimination at the end of August 2022, and BHSU

informed her that it would not consider her for the Director role in December 2022.  But because

BHSU has asserted a legitimate, non-discriminatory reason for its failure to consider her

application—the notation that she was ineligible for rehire as of October 2013—the burden shifts

to Thomas to present some evidence from which a reasonable jury could conclude that the

notation was a pretext for retaliation.  She has not done so.

B.    Pretext

The same rules for establishing pretext under the ADEA apply to Thomas's retaliation

claim.  The ultimate question "is always whether the employer made up its stated reason or not." Tingle v. Arbors at Hilliard, 692 F.3d 523, 530 (6th Cir. 2012) (quoting Chen, 580 F.3d at 400 n.4).  Thomas argues that there is a genuine dispute of material fact as to (1) whether the notation in her file actually motivated BHSU's decision not to consider her application for the Director position because BHSU never notified her that she was ineligible for hire before she filed her discrimination charge and (2) whether the circumstances leading to the notation have a basis in fact because she asserts that she worked the entirety of her notice period before she resigned in 2013.  But Thomas does not present any evidence that a jury could rely on to find pretext.  Thus, no reasonable jury could find in her favor.

       1.    Motivation

Thomas asserts that her ineligibility for rehire did not actually motivate BHSU's decision not to consider her application because it never informed her of her ineligibility for rehire when it interviewed her for the ASC position, and it never informed her of her ineligibility when she applied for other Baptist positions in 2022.  (ECF No. 23 at PageID 384.)  To prove that there is a genuine dispute of material fact as to whether her ineligibility did not actually motivate BHSU's decision, Thomas must show circumstances from which a reasonable jury could infer that "an illegal motivation was more likely than that offered" by BHSU.  See Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000) (quoting Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1084 (6th Cir. 1994), overruled on other grounds by Gross, 557 U.S. at 180).

Thomas's allegations are akin to an argument that BHSU offered "shifting justifications" at different points in time.[9]  See, e.g., Torres v. Precision Indus., Inc., 437 F. Supp. 3d 623, 636–

---

[9] The "shifting justifications" framework typically applies in situations in which an employer offers a different rationale for the same adverse employment action.  Here, Thomas alleges that BHSU offered a different rationale for different employment actions.  But because Thomas

37 (W.D. Tenn. 2020) (recognizing that an employer's changing rationale for making an adverse

employment decision can be evidence of pretext because it calls the credibility of that rationale

into question).  But an employer does not offer shifting justifications when it provides

"additional non-discriminatory reasons that do not conflict" with each other.  Id. at 637 (quoting

MacDonald-Bass v. J.E. Johnson Contracting, Inc., 493 F. App'x 718, 727 (6th Cir. 2012)).

BHSU provided evidence stating the documented reason for each of its employment decisions

relating to Thomas, and none of them conflict with each other.  (See ECF No. 21-4 at PageID

140 (stating that Thomas was not hired either because there was a better candidate, there was a

compensation issue, she didn't meet the minimum requirements, she was not eligible for rehire,

or "other").)

Thomas's "shifting justifications" argument also fails for another reason—the undisputed

facts show that Baptist did mark her as ineligible for rehire before she filed her discrimination

charge in August 2022.  Baptist's internal documents demonstrate that it marked her as ineligible

for rehire for two positions she applied for on March 22, 2022, and one position she applied for

on May 18, 2022.[10]  Thomas argues that no one ever notified her about that demarcation.  But

the evidence demonstrates that neither Baptist nor BHSU ever gave a substantive reason for not

hiring Thomas for any position she applied for.[11]  And there is no evidence indicating that they

are required to do so.

BHSU also presented undisputed evidence explaining why Thomas was only flagged as

---

alleges that BHSU could have offered the same rationale for all of them—that she was ineligible
for rehire—but did not do so until after she filed her charge of discrimination, this framework is
helpful here.

[10] It is not clear whether these positions were with BHSU or a separate Baptist entity.

[11] The closest BHSU came to justifying its decision to Thomas was when Farris told Thomas that
"the position has been filled."  (ECF No. 28 at PageID 477.)

ineligible for rehire for some positions and not others, like the ASC role.  Different recruiters

perform internal reviews at different points in time depending on the number of applicants and

their own preferences.  BHSU asserts, and Thomas does not dispute, that the internal review

process to determine eligibility for rehire typically does not occur until <u>after</u> BHSU makes the

decision to hire someone.  Indeed, when Thomas was asked during her deposition about when

BHSU looks at eligibility for rehire, she stated that she assumed it was when BHSU decided who

to select for the position because that was a "standard" practice based on her experience.  (ECF

No. 21-5 at PageID 226.)  Thus, it would be abnormal to notify Thomas that she was ineligible

for rehire until she was selected for a position, and she never was.

The thrust of Thomas's pretext argument is that BHSU did not notify her that she was

ineligible for rehire until after she filed her charge of discrimination, therefore that rationale must

be pretextual.  But the undisputed facts indicate that BHSU did not know that Thomas was

ineligible for rehire until the investigation into her charge.  Based on that timing, BHSU was

already on notice that she was not eligible for rehire when she applied for Director position in

December 2022, and so it immediately notified her about her ineligibility and asked her to

complete the attached rehire eligibility review form if she wanted to be considered for the

position.  She did not do so.

Looking at the facts in the light most favorable to Thomas, the sheer weight of the

evidence cuts against her.  She has not produced evidence from which a reasonable jury could

find that her ineligibility for rehire did not actually motivate BHSU's decision.  Her argument

that this justification has no basis in fact is similarly unsupported.

2.    Basis in Fact

Thomas also argues that BHSU's justification that she was ineligible for rehire has no

basis in fact because it is simply not true—she asserts that she should not have been marked as ineligible for rehire because she worked her full notice period. "But a case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the [BHSU's] grounds for" marking her ineligible for rehire. See Tingle, 692 F.3d at 530. Instead, Thomas also must offer some evidence that, not only were BHSU's reasons false, but retaliation was the real reason for the adverse action. See id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Thomas's failure to complete the eligibility review form precludes her from establishing pretext. Even if Thomas could convince a jury that she worked her entire notice period for her previous position, she cannot establish pretext because BHSU had an "honest belief" that she had not done so—its records indisputably indicate that she was not eligible for rehire for failing to work her notice period.[12] See id. at 530–31 (recognizing that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect" (quoting Majewski v. Auto. Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001))). And BHSU offered Thomas the opportunity to correct the record, which she declined to do.

Thomas has no evidence to show that BHSU's belief that she was ineligible for rehire was dishonest. See id. (stating that the plaintiff must produce some evidence from which the jury could reasonably reject the employer's explanation and infer that it did not honestly believe in the proffered justification, such as when the error is "too obvious to be unintentional"). Again, she never contested her ineligibility when Farris informed her about it, despite the

---

[12] Thomas does not argue that the document was fabricated after she filed her EEOC charge—indeed, she would have no evidence to support that argument.

opportunity to do so with the eligibility review form.  She simply ignored Farris's email, even though she asserts that she disagreed with it.  If anything, Thomas's failure to contest the ineligibility notation makes it even more likely that BHSU's belief was honest—it had no reason to believe otherwise.

Thomas's "base assertion" that BHSU's "proffered reason has no basis in fact is insufficient" to call that honest belief into question, and it "fails to create a genuine issue of material fact."  See id. at 531 (quoting Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 285 (6th Cir. 2012)).  Because Thomas has no evidence to support a finding of pretext, BHSU's motion for summary judgment on her retaliation claim is **GRANTED**.

<u>CONCLUSION</u>

Thomas relies on a mere scintilla of evidence to support her claims under the ADEA and THRA.  That may have been enough to make it this far in the litigation, but it is not enough to survive summary judgment.  Thus, BHSU's motion for summary judgment is **GRANTED** and Thomas's claims are **DISMISSED WITH PREJUDICE**.  There being no need for a trial, the parties' joint motion to continue it is **DENIED AS MOOT**.

**IT IS SO ORDERED,** this 11th day of April, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE